Good morning, ladies and gentlemen, and welcome to the Ninth Circuit. We have several cases on the calendar today, which we'll hear in the order in which they appear on the date sheet. The second case, Superior Consulting Services v. Jennifer Steves Kiss, has been submitted on the brief. So the first case we'll hear is Carly Kogler v. State Farm General Insurance Company. Please state your appearances for the record. Brian Malloy. May it please the Court, Brian Malloy for Plaintiff and Appellant Carly Kogler. And I'd like to reserve two minutes for rebuttal. Keep your eye on the clock, Mr. Malloy, because we won't remind you. Okay? Your Honors, I will just jump in to address the two questions that the panel has asked that we address. And the first question is, do any of the issues in this case warrant transfer to the California Supreme Court? Certification. Certification of the California Supreme Court. And the short answer to that is no, and let me explain why. Transfer or certification is warranted when the decision could be outcome determinative. In this case, we have four distinct issues. We have the breach of the duty to defend on the personal injury slash false imprisonment coverage, breach of a duty to defend on the accident coverage, and then separately the breach of the duty to indemnify on the personal injury and the breach of the duty to indemnify on the accident coverage. The ruling in Plaintiff's favor on any one of those issues moots the others. So the panel could find that State Farm breached its duty to defend solely on the false imprisonment personal injury and then reverse on that and the other issues are moot. But if we think that that question turns on an unresolved issue of California law, then aren't we back where we started about whether we should have the California Supreme Court answer that question? Well, let me address that specific provision. So there's coverage for false imprisonment, and Judge Donato correctly found that the plaintiff had met her burden in showing false imprisonment. Under the umbrella policy. Under the umbrella policy. Then the burden switched to State Farm, and they had to conclusively establish an exclusion, and there was only one exclusion. They had to show the uncontradicted evidence is that Frank had a specific intent to cause harm. Under the policy exclusion, but not under Section 533 of the insurance code, correct? That's correct. That's correct, Judge Bea, but under Downey Venture in the California case law, insurance code 533 does not apply to the duty to defend. Judge Donato also correctly found that, that he. You cited some cases, but those cases are where the duty to defend and the duty to indemnify are separately stated. So I wouldn't spend too much time on that issue. Okay, Your Honor, I would just submit that in this case, there is a separate duty to defend in the policy. The policy under the umbrella states that they will defend. It's called defense. They will defend claims of false imprisonment. And the only exclusion to that defense is if State Farm shows there was a specific intent to cause harm. Section 533 has been interpreted time and again as applying to all insurance policies. It's an implied condition of all insurance policies. And I would agree with you for indemnity purposes, but on the duty to defend, and Judge Donato correctly said this in his order. We agree with Judge Donato that he correctly found there was false imprisonment coverage. Judge Donato also correctly said that 533 did not bar the duty to defend, and that's why he went on to separately analyze it. He relied on Downey Venture. And we believe he was correct on that point, which we believe he wasn't correct on, was the finding that State Farm had conclusively meant its presumption. How does Jacobs fit into your argument? There are three points I want to make with Jacobs, and the first one has to do with its defense duty. In Jacobs, the insurance company actually defended his insured. We have a case where the defendant is pointing a gun, shooting, and causing harm knowing he's going to cause harm to the victim. And what did the insurance company do? They defended him in the underlying action through a jury trial. With a reservation of rights. Absolutely. And State Farm could have done that here. Yes, but I'm saying the rule of the Jacobs. You're suggesting we don't have to certify it to the Supreme Court. So you're accepting Jacobs, even though it's sort of alone out there. But it seems to me that Jacobs creates a difficult problem for you. Well, I would say, Jacob, just procedurally, what State Farm should have done here, they should have defended Frank with a reservation of rights. Well, yes, that's one way they can do it. But I'm talking about the law of Jacobs itself. Well, what Jacobs said was, first of all, Jacobs also, and I think this is really important, that the provision in Jacobs was an accident provision. It wasn't a false imprisonment with a specific intent to harm. It was an accident. But I think the third point with Jacobs, and I think this is what you're getting at, Judge Wallace, is this difference between volitional and cognitive incapacity. And Jacobs suggests that while cognitive incapacity may negate a willful element, volitional does not. And in this case, I would submit we have at least an issue of fact over Mr. Frank's cognitive capacity. Well, what about the footnote 8 in Jacobs? Well, footnote 8. Even assuming, for the sake of argument, the intent to require most be shown in addition to the sake of argument, isn't Jacobs pretty well going to undercut your argument? Absolutely not, because Jacobs, well, first of all, Jacobs, again, the insurer defended, and then only after a jury trial when all the evidence was presented, the insurer then in a declaratory relief action said, okay, we've done our defense duty. We've defended him through trial. We don't have to pay this judgment because he had a volitional incapacity, which does not work here. So they're one step removed. Jacobs said, and the court said, volitional incapacity does not result in negating the willful act provision of 533. Jacobs does not discuss the duty to defend because the insurance company there defended it. But don't you need to show that there is this preconceived design to inflict injury? Yes. When the mental state is at issue, which it is here, State Farm has the burden of showing there is this preconceived design to inflict injury. And in this case, Frank's mental state is at issue. And if his mental state is at issue, they had a duty to defend. Which mental state? Volitional or cognitive? Frank's cognitive mental state is at issue. And I'll give you a very interesting part of the record. It's at 3, Volume 3, at 277 to 278. And this is State Farm's denial letter. And State Farm goes through all the facts of what happened. And these facts raise the issue with his cognitive defect. Meaning cognitive defect is I don't know what I'm doing. Doesn't understand the nature and quality of his act. Exactly. I don't understand what I'm doing. Volitional incapacity is I understand what I'm doing. I just can't control myself. The facts in this case, at least potentially, is Frank doesn't remember what happened. He blacked out. And then contemporaneous witnesses. This is what they said. This is on 277. He doesn't remember what he was doing. That doesn't mean that he didn't know what he was doing at the time. That would be an issue of fact. And so his mental state becomes at issue. And if you put Frank aside, put Frank over here, and look at the witnesses who were there at the time. This is at 277 to 278. Frank was seen eating grass. He was seen throwing dirt around. He grabbed a hat off another woman and tossed it. He's described as screaming, out of control. So, I mean, you may be able to show with this kind of evidence that there's at least a question about this preconceived design to inflict injury or whether he could even understand his actions. But isn't underlying that some question about how California would treat intoxication? Like, why isn't there a question that the California courts should answer about whether intoxication can preclude, can count in terms of whether this intent is present? I would point to Penal Code section 229.4B. Penal Code section 29.4A was cited by State Farm. And they said intoxication is not a defense. We cited 29.4B, which says evidence, this is California law, criminal law, evidence of intoxication is admissible on the issue when there is specific intent. And in this case, we have an issue of specific intent. Now, under section 533, you don't. Under 533, it's a question of willful. Willful is not synonymous with specific intent, although Clemmer said that. But J.C. Penney took it out. And that's what footnote 8 that Judge Wallace was talking about is so important in Jacobs. And I agree. Footnote 8 is important. Footnote 8, though, does address 533. And I go back to the point that 533 only comes into play when there is an indemnity duty. The California law, Judge DeMille. Kennedy. But we all know that if there's absolutely no coverage, there's no duty to defend, right? No, no, not necessarily. And I would point to the duty to defend is broader than the duty to indemnify and all that. But if there is no duty to cover at all, there is no duty to defend. And you agree with that? Not necessarily. Amado 2, you can't look at the duty to defend in hindsight. You have to look at the duty to defend at the time. In Amado 2, which is cited in our papers, in that case, the jury found on a question and that there was no coverage, but the court said, you know what, you should have defended him even though ultimately there was no coverage. But if there was no question of coverage, if it was very clear even from the start that there was no coverage, then there would be no duty to defend. Well, in this case, yes, I would agree with that. However, in this case, we have a provision that says if I get sued for false imprisonment, you're going to defend me. And the only way you get out of defending me is if I can show, State Farm can show, a specific intent to harm. That's the policy exclusion. And I think you have a very good argument on policy exclusion. I don't think you have such a good argument on 533. If I could reserve the balance of my time. Let me ask you a question. I'll ask the clock not to run because I just want to make sure I understand your position. In this Jacobs decision, which is of concern to me, they discuss an American attributed to the voluntary ingestion of alcohol or other psychiatric substances. Doesn't that interfere with your argument when they go to this study and make reliance upon it? No, Judge Wallace. California Penal Code 29.4B allows for evidence of intoxication when specific intent is at issue. So I would submit that that is not correct. And, again. You mean Jacobs is incorrect? No, no, no. That statement from the American Psychiatric Society, which is not binding. Unless the court says it's binding. Unless the court says it's binding. But it's not binding now. It's just a statement made by an association. Jacobs, though, and I keep repeating myself, but the only reason we have all of this evidence about Jacobs is because the insurance company defended the shooter. And then in a separate action dealt with coverage. That didn't happen here. Frank was abandoned right off the bat. Frank had to do this himself. And if you look at the cases, the J.C. Penney case, the Horace Mann case, a lot of the cases that State Farm is citing, Altieri, Minterosch, Ezrin, in all of those cases that I just mentioned, the insurance company defends the insured in the underlying action and then separately tries to disclaim coverage. And so is your point that if there had been a defense and a trial, there might have been testimony that he didn't even understand what he was doing at all, had no awareness at all? Absolutely. Just like in Jacobs where you had battling psychiatrists and psychologists, you had all this evidence come out. Here we didn't have that because there was a breach of the duty to defend. Okay. Thank you. I appreciate your response. Thank you. May it please the Court. Clark Holland on behalf of State Farm General Insurance Company. We believe that Jacobs answers all of the questions that the Court has. The one thing I guess I can agree with counsel for appellant is that certification is not necessary, but I will agree with that. I will absolutely tell your honors that we have no problem with certification because I'm very confident that the California Supreme Court would say what they have said over and over again, which is that inherently harmful acts do not require any evidence of some preconceived notion of inflicting harm. The harm is imputed by the act itself. J.C. Penney says it. Altieri says it. Every case since then have said the same thing over and over again. When you commit an inherently violent felony and are convicted, those things are imputed to that person, and Jacobs answered the question about whether or not irresistible impulse could be an exception to 533, and the Court said absolutely not. But in Jacobs, there was — it was uncontested that the person in question understood the nature and wrongfulness of his actions and — or at least understood the nature of his actions. It's not clear here that — sorry, I'm forgetting his name. Mr. Frank. Mr. Frank knew the nature of his actions. Maybe he was so intoxicated that he was hallucinating or something and didn't even know the nature of his actions. Let me address that. Let's look at the evidence that Judge Donato saw, which included the complaint itself, which showed that Mr. Frank stalked the victim and then found her again 20 minutes later. It demonstrates his ability. It wasn't like he was flailing around, unable to commit specific acts. I mean, maybe, but maybe he thought he was chasing an elephant or something. I mean, how do we have any idea, given that there wasn't testimony about that? I will address that very clearly, which is that the only exception to 533 is insanity. The California courts have said that over and over again. There's no insanity plea here. There's no evidence of insanity. But more importantly, there is a law that says that voluntary intoxication or ingestion of alcohol or psychoactive substances cannot create such an exception. And let me focus. Mr. Holland, you keep talking about there's no evidence here. There was a complaint and an underlying complaint, a second complaint. And there was no evidence introduced because you refused to defend. Well, there was no evidence presented to State Farm that he was insane. But there was an allegation that he was unable to understand the nature and consequences of his act. There was an allegation in the complaint that there was no cognitive capacity. Don't we have to take the allegations of the complaint as true? I agree that there was an allegation that the intoxication made him unable to formulate this. And our position is very clear that 533 doesn't allow that allegation to have any significance. And let me ---- Do we have any cases in California that say that voluntary intoxication is not a basis for cognitive incapacity? I think that we do. And I think the answer to that is the jury instructions. Justice Wallace asked about the comment in Jacobs about the APA standard for insanity. But it's important to note that under all of the California jury instructions that deal with the issue of insanity, the court's jury instructions have one important caveat. This defense of legal insanity does not apply when the sole or only basis or causative factor for the mental disease or mental defect is an addiction to or an abuse of intoxicating substances. But that's about the insanity defense in a criminal case, right? And so here if we're talking about whether some kind of massive confusion can undermine willfulness, why couldn't intoxication do that the same way insanity could? Because 533 is coextensive from a public policy point of view with the desire to make sure that people using alcohol cannot use that as an excuse to commit a willful act under 533. And let me say that Judge Donato recognized this, I think, in his ---- But you're saying it's a willful act. I mean, I guess that's the question, right? I mean, if someone is drunk, I think, if someone's drunk and they're driving and they hit someone, the insurance still covers that? Sure, because, well, it depends. If the evidence was that the person drove straight at somebody with the intent of hitting them, then no, their drunkenness wouldn't ---- Okay, but just drunk and has an accident. So they're drunk on purpose, but they have an accident. So here if he's intoxicated on purpose, but then does something that he has just no awareness of at all, no idea what's going on, he thinks it's an elephant, how is that not some sort of ---- I mean, you already said the intoxication intentionally doesn't undermine it. It's not an accident when you grab someone by the hair and drag them 20 feet and fight off six people. There's nothing accidental about that conduct. And ---- Well, if you know that you're doing it, right, then it's not accidental. Well, let's remember why he didn't know, right? He didn't know because he voluntarily ingested alcohol and drugs. Yeah, but so did the drunk driver. So did the drunk driver. If there was a claim, if intoxication was an exception to Insurance Code 533, and there's absolutely no ---- 30 years of J.C. Penney, 30 years of litigation over this, there isn't one hint that any court of appeal in California or the Supreme Court has even hinted that intoxication would be an exception to 533. Imagine the impact. Every insured and every victim would claim that they were intoxicated to create an issue of fact, and 533 would be a dead letter. And let's think about those cases. Every bar fight, every date rape, every fight after a baseball or football game, all of these assaultive kind of conducts and rape and even molestation could be subjected to this exception of intoxication. And, of course, it would be impossible to disprove. No one tested Mr. Frank's blood alcohol level in any timely way, and in most instances that doesn't happen. So all a person would have to say is, I don't remember I was drunk, and suddenly every insurance company would have to defend every intentional act like this, even though there was absolutely no evidence that the conduct occurred because of anything that you could remotely call accidental. And let's remember that Mr. Frank pleaded guilty to the assault. He pleaded guilty to the false imprisonment. He didn't assert intoxication as a defense to any of that conduct. And, of course, the reason was that he could not. So you're making a compelling policy argument, but isn't the majority rule actually the opposite? So Hanover Insurance v. Talhouni from Massachusetts says the majority rule is that voluntary intoxication may negate specific intent for insurance. The majority rule — well, first of all, the majority rule may well be that, but the majority rule where the underlying statutory scheme has a 533-like component does not have that exception. And, again, I think the reason for that is obvious, that if voluntary intoxication was an exception, then those laws would have no meaning. And I think — But so, I mean, is insurance coverage not tenable in Massachusetts and all these other States? I mean, how is it working out in those places? I have — I actually have no idea. But the California Supreme Court has certainly never even hinted about such an exception. It's not allowed in any form of criminal matter, nor has it ever been allowed in any civil matter. It's not allowed, for instance, in punitive damage circumstances. There are many cases in California where the person claims that they were drunk, and the question is, are they subject to punitive damages? And the answer has always been consistently, absolutely they are. Every drunk driving case, punitive damages are available. And the Court has never in California hinted that you could undo conscious disregard, even if you were unconscious. That's the irony, right? Punitive damages requires conscious disregard. Mr. Frank says he blacked out. He can't — he doesn't have any evidence of his intent because he doesn't remember anything. The only thing we have to go by is what he actually did, which clearly was not someone falling out of a tree or doing something crazy while hallucinating. It was very precise and deliberate and focused, aggressive action of someone who was capable of the volitional conduct. And again, I think the courts have made clear that you cannot undo that by claiming that you were drunk. I mean, the California courts have been clear. California courts have been clear. And I would say, given the frequency with which alcohol contributes to assaultive behavior, and unfortunately it's a fact, in the last 30 years since J.C. Penney, it would be extraordinary that the courts would not face this. And again, if they did, 533, I fear, would be a dead letter. It would simply have no impact because everyone would be drunk. And again, Judge Donato, I think, recognized this. Allowing voluntary intoxication to avoid an agreement upon exclusions for intentional harm would unduly disrupt settled contract expectations. The decision to voluntarily intoxicate oneself with illegal drugs, no less, should not be abetted or rewarded by the comfort that one's ensuing savagery will be paid for by the insurance company. I think Judge Roberts, do you have a case, Mr. Holland, of voluntary intoxication not being a basis for avoiding 533? I don't. I concede in California that I don't have such a case. And I think the reason I don't have such a case is that the California law is so overwhelmingly clear that willfulness under 533 cannot be accepted by claiming that you didn't know what you were doing, absent insanity. And again, California law is clear. In all the cases like Clemmer and other cases in which the courts have ruled upon this idea of, I'll call it, diminished capacity as an overarching claim, the only diminished capacity exception that the court has ever allowed is insanity. And the California courts have clearly stated that voluntary intoxication isn't insanity. It isn't a form of insanity. It is clearly not something that you can claim. And that's why I don't think certification is necessary. On the other hand, I'm confident that the California Supreme Court would recognize that intoxication would simply void 533 and it would have no meaning and all of a sudden all of these ridiculously criminal actions would become covered insurance. So you say we have to disregard the allegation of the underlying complaint that Mr. Frank was unable to appreciate the nature and consequences of his act? I think you can disregard it in that the only basis for that allegation was that he was drunk. And that's clear. So I think the answer is I wouldn't disregard it. I would simply recognize that everyone agrees he was drunk. In fact, the stipulated facts in this case to Judge Donato was that he was drunk and on LSD. Interestingly enough, of course, the report that Mr. Frank submitted said that the circumstances in which he took it and that it was the intoxication that would have that impact. I don't think that is particularly relevant since both psychoactive substances and alcohol are treated by California in the same way as I've quoted from the jury instructions. So it doesn't matter. What did he plead to in that regard in the criminal case? That's interesting. He could have pleaded, you know, not guilty by reason of insanity or some other form. He just pleaded guilty. He pleaded guilty to assault. He pleaded guilty to false imprisonment. And it's important to note that those pleas included assaultive behavior to several other people. So it wasn't just that he assaulted the victim in this case, Ms. Kogler, but he assaulted and falsely imprisoned another woman who was attempting to come to the aid of Ms. Kogler. This was considerable assaultive behavior on his part, not just by one person. He managed to fight off five or six. Does the record indicate the actual hearing where he entered a plea in the California State Court? In fact, it is part of the record, Your Honor. We included the entire hearing, and he admitted to the Court that the Court read him the charge, read him what he was being found guilty of, and he admitted the guilt. He at that time was competent, found competent by the Court? Absolutely. He was, in fact — And he made the statement at that time. He made the statement at that time in open court. And there is not one shred of evidence that he ever claimed that he was incompetent immediately prior to the beta breakers and immediately after when he woke up and talked to the police. In fact, the police interview is in the record as well. And he was very candid with the police about his use of LSD and his use of alcohol, and there was no evidence that he wasn't extremely well-versed at the time. He was a college student, not having any apparent problems before or after. Thank you very much. Thank you. On that last point with his criminal plea, even State Farm acknowledges in the briefing that's not conclusive evidence of intent. The case law is clear. It can be considered, but it's not conclusive. Wait a minute. Just a second. Just because it's in a criminal proceeding doesn't mean we just disregard it and erase it. If he made certain statements at that time, said I was clear as a bell, then that certainly would be something that we could consider. Absolutely. You consider it. The case law says it's not conclusive. You have to look at the other evidence as well. What case do you cite that you can't rely on that alone? That you can't rely on that alone? Yeah, when a person goes under oath, testifies in a criminal case as to what he did, you can't rely on that alone? It cannot be the only basis of denying coverage under California law. We addressed this actually in our reply brief, and I can get the case. Okay. It's in your reply brief? It's in our reply brief. It's not conclusive evidence. And the reason it's not conclusive is because people plead no contest and guilty for a variety of reasons. They don't want it to completely eliminate coverage. Well, I've taken quite a few pleas while I was a district court judge, and I took those pleas after putting the person under oath and making sure that wasn't the case. It seems to me you're minimizing that part of the case. Is there a case law from California saying that you can minimize it that way? The case law, and it's in our reply, says it can't be conclusive evidence. It's not collateral estoppel effect on their intent. But it certainly is something that can be considered. It's evidence, absolutely. And I'm not suggesting it's not evidence. It's just not conclusive. So your rebuttal was he was lying at that time? No, my rebuttal is you have to look at his plea, and then you have to look at all these other facts that we have where he is, not only does he say he blacked out and he doesn't have memory, but the police officers at the day, on the day, say he was under the influence of narcotics. And he's not acting precise and deliberate. He's acting like a wild man out of control. He's eating grass. He's throwing dirt. He's running around screaming. I understand. But I don't understand why he was ever convicted if he didn't have the intent to commit the crime. Well, he pled guilty to three general intent crimes, and that's important. The exclusion here is the specific intent to cause harm. And I would also, Judge Bea asked earlier about the defense coverage. On 176 of the record is stipulated facts of the policy, and this is under the umbrella. And it says it does provide for defense coverage of when you have a personal injury false imprisonment claim alleged against you. And as Judge Donato recognized, he recognized on page four of his order, insurance code 533 does not apply to a breach of a duty to defend. And so I would submit this panel could find a breach of the duty to defend because we have all these unanswered questions. There's a potential for coverage here. And if there's a potential for coverage, that means State Farm should have at least defended him in the underlying action while the case played out. Just like the insurer did in Jacobs. Just like the insurer did in J.C. Penney. Just like the insurer did in Horace Mann. Just like the insurer did in Altieri, Mintarosh, and Ezrin. Defend the insurer in the underlying action, and then. Is there any case that talks about a duty to defend when there's a legal question that's unanswered? Sort of like clearly established law in 1983 or something. I mean, is there something like if this law isn't clearly established, you have a duty to defend in the first case that brings it? I would say Jacobs, and I don't. Jacobs is probably the closest because in Jacobs, they defended and then they brought this issue with volitional insanity in the coverage action. So there probably was this unclear issue under California law whether volitional insanity could negate. But there they did defend. So we don't know whether we don't have an answer on the duty to defend, really. Correct. I think you just can infer from the fact that they defended that they felt, well, if there's a potential for coverage here, we have a duty to defend this guy, even though he shot, shot and seriously hurt the victim. We've taken your pass through time. Thank you very much. Thank you. The case of Kogler v. State Farm is submitted for decision, and we'll go to the next case on the calendar.
judges: Wallace, Bea, Friedland